1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

8

NORTHERN DISTRICT OF CALIFORNIA

9
10

GRUNDIG MULTIMEDIA AG,

11

Plaintiff,

12

v.

13

ETÓN CORPORATION,

14

Defendant.

15

Case No. 20-cv-05206-NC

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING IN PART AND DENYING IN PART ADMINISTRATIVE MOTION TO SEAL**

Re: Dkt. Nos. 27, 28

16        This case arises out of a breach of contract action brought by Plaintiff Grundig

17   Multimedia (Grundig) against Defendant Etón Corporation (Etón) in the Commercial

18   Court of the Canton of Zurich, Switzerland (the "Swiss action").  In the Swiss action, Etón

19   failed to appear, and the Swiss court entered a default judgment against it.  *See* Dkt. No.

20   27-2 ("MSJ").  The Swiss judgment against Etón is final now that the time to appeal has

21   lapsed.  *See id*.  Grundig brings the instant action to recognize and enforce the Swiss

22   Judgment pursuant to California's Recognition Act.  *See* Dkt. No. 1; Cal. Civ. Proc. Code

23   §§ 1715–1724.  On December 2, 2020, Grundig filed a motion for summary judgment and

24   administrative motion to seal.  *See* MSJ; Dkt. No. 27.  The Court found the matter suitable

25   for decision without oral argument, so the Court vacated the hearing scheduled for January

26   20, 2021.

27        Having considered the parties' submissions, the Court GRANTS Grundig's motion

28   for summary judgment and GRANTS IN PART AND DENIES IN PART the

Case No. 20-cv-05206-NC

United States District Court
Northern District of California

1  administrative motion to seal.

2  **I.     BACKGROUND**

3       **A.     Factual Background**

4            Grundig, a Swiss consumer electronics company, owns the trademark

5  "GRUNDIG."  *See* Dkt. No. 27-4 ¶ 6.  On February 1, 2014, Etón entered into a

6  Trademark License and Distribution Agreement (the "Agreement") with Grundig to

7  license the trademark.  *Id.* ¶ 7  Under its terms, the Agreement would be governed by

8  Swiss law, the parties submitted themselves to the exclusive jurisdiction of the "courts of

9  Zurich, Switzerland, for determination of any dispute arising out of or under this

10  Agreement," and the parties consented to service of process by those courts in a manner

11  provided by Swiss law, waiving any forum non conveniens arguments.  *Id.* ¶ 8.  The

12  Agreement also provided that notices pursuant to the Agreement shall be served on Etón at

13  its Palo Alto, California address.  *See* Dkt. No. 30 ("Opp'n") at 2.; *see also* Dkt. No. 31

14  ("Reply") at 5.

15            Etón did not provide Grundig with the royalty statements and payments required

16  under the Agreement.  Dkt. No. 27-4 ¶¶ 9–10.  After numerous attempts to confer with

17  Etón about the non-payment over a two-year period, *see* MSJ at 3–4, Grundig filed suit

18  against Etón in the Commercial Court of the Canton of Zurich on December 14, 2018, for

19  breach of the Agreement, *see* MSJ at 4.  The Swiss court issued a decree on February 4,

20  2019 ("February 4 decree"), ordering Etón to respond and designate a Swiss domicile.

21  Dkt. No. 27-4 ¶ 40.  The Swiss court confirmed that its February 4 decree "was

22  successfully served to the Defendant on March 25, 2019, by way of judicial assistance."

23  *Id.*  On March 25, 2019, FedEx delivered a package to Etón at its Palo Alto address,

24  containing the February 4 decree from the Consulate General of Switzerland in San

25  Francisco.  Reply, Ex. 1.  Etón's Senior Administrative Assistant signed for the delivery.

26  *Id.*, Exs. 1–2.

27            Etón did not respond to the February 4 decree.  Dkt. No. 27-4 ¶ 42.  So, the Swiss

28  court issued another decree on June 20, 2019, and provided Etón with a ten-day extension

1   to respond, at which point the Swiss court would potentially move to make a final

2   judgment in the suit if Etón further defaulted.  *Id.*; Reply, Ex. 3.  The Swiss Clerk of Court

3   issued notice of the June 20, 2019, decree via publication in the Swiss Commercial Gazette

4   on June 24, 2019, after Etón failed to respond to notice delivered and received at its Palo

5   Alto address.  *See* Reply, Exs. 1, 3.  Etón remained in default after the grace period, and

6   the Swiss court entered default judgment against Etón on July 10, 2019.  MSJ at 4; Reply,

7   Ex. 4.  The Swiss Clerk of Court issued notice of default by publication on July 16, 2019.

8   *See* Reply, Ex. 4.  Etón maintains that it intends to pursue an appeal or reopening of the

9   Swiss default judgment, but "efforts to identify and retain appropriate counsel have been

10  hampered due to the ongoing Covid-19 Global Pandemic."  Opp'n at 3.

11      The Swiss Judgment establishes that Etón is obligated to pay Grundig four

12  installments of the fixed installment fee pursuant to the Agreement, and payment of a

13  licensing fee for the price at which it sold the licensed products.  Dkt. No. 27-4 ¶¶ 44–47.

14  Finally, the Swiss Court also held that Etón is obligated to pay Grundig a default fee,

15  default interest, and Grundig's Swiss court fees and attorneys' fees.  *Id.*  After the entry of

16  judgment, Etón had thirty days to file a federal appeal against the Swiss judgment in the

17  Swiss Federal Court.  Dkt. No. 27-4 ¶¶ 49–50.  Etón failed to file an appeal within the

18  allotted time, so the Swiss judgment is now final.  *Id.*  Etón has yet to make any payments

19  toward the Swiss judgment.  MSJ at 6.

20      **B.    Procedural History**

21      Grundig filed the instant action in this Court on July 29, 2020, along with a separate

22  motion to seal portions of the complaint.  Dkt. Nos. 1, 5.  The complaint states claims

23  under California's Recognition Act, and state law breach of contract claims.  *See* Dkt. No.

24  1 ¶¶ 22–33.  At the case management conference on October 28, 2020, the parties agreed

25  to participate in mediation and the parties attended mediation on December 22, 2020.  *See*

26  Dkt. No. 32.  On December 2, 2020, Grundig moved for summary judgment and filed an

27  administrative motion to seal portions of the summary judgment motion and exhibits.  *See*

28  MSJ; *see also* Dkt. No. 27.  Etón timely opposed.  Dkt. No. 30.  Both parties consented to

United States District Court
Northern District of California

the jurisdiction of a magistrate judge.  Dkt. Nos. 15, 17.

## II.   LEGAL STANDARD

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any material fact.  Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* Bald assertions that genuine issues of material fact exist are insufficient.  *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

The moving party bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings, and, by its own affidavits or discovery, set forth specific facts showing that a genuine issue of fact exists for trial.  Fed. R. Civ. P. 56(c); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) (citing *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)).  All justifiable inferences, however, must be drawn in the light most favorable to the nonmoving party.  *Tolan*, 134 S. Ct. at 1863 (citing *Liberty Lobby*, 477 U.S. at 255).

## III.  GRUNDIG'S MOTION FOR SUMMARY JUDGMENT

### A.    Application of the Recognition Act

California has enacted the Uniform Foreign-Country Money Judgments Recognition Act (UFMJRA), codified under California Code of Civil Procedure section 1713, *et seq*.  The Recognition Act applies to all foreign-country judgments which: (1) grant recovery of a sum of money; (2) is final, conclusive, and enforceable under the law of the country where it was rendered; and (3) is not a judgment for taxes, a fine or other penalty, or a judgment arising from domestic relations.  Cal. Civ. Proc. Code § 1715; *AO*

United States District Court
Northern District of California

*Alfa-Bank v. Yakovlev*, 230 Cal. Rptr. 3d 214, 222 (Cal. Ct. App. 2018).  The Recognition Act employs a burden-shifting framework; first, the party seeking to enforce the foreign judgment must establish the statutory requirements above.  *See de Fontbrune v. Wofsy*, 409 F. Supp. 3d 823, 831 (N.D. Cal. Sep. 12, 2019).  Then, once an initial showing is made, "there is a presumption in favor of enforcement, and the party resisting recognition bears the burden of establishing that one of the enumerated bases for nonrecognition set forth in § 1716 applies."  *Id.* (internal citations omitted).  "A court must recognize the foreign judgment unless the resisting party can carry its burden."  *Id.* at 832; Cal. Civ. Proc. Code § 1716(a).

Here, Grundig established that the statutory requirements are satisfied for recognition of the Swiss Judgment.  Grundig presented evidence that the Swiss court issued a judgment in its favor granting a sum of money, Dkt. No. 27-4 ¶¶ 44–48, the default judgment is final, conclusive, and enforceable under the laws of Switzerland, *id.* ¶ 51, and it is not a judgment for taxes or penalty, *see* MSJ at 11.  Etón provided no evidence to the contrary.

The Recognition Act provides three mandatory grounds for nonrecognition: (1) where the judgment was rendered under a judicial system that does not provide impartial tribunal or procedures compatible with the requirements of due process of law; (2) where the foreign court did not have personal jurisdiction over the defendant; and (3) where the foreign court did not have jurisdiction over the subject matter.  Cal. Civ. Proc. Code § 1716(b).  Etón does not argue that any of the mandatory grounds apply here.

The Recognition Act also provides nine discretionary bases where a court "is not required to recognize a foreign-country judgment."  Cal. Civ. Proc. Code § 1716(c).  Of those nine, Etón argues that the following defenses under section 1716(c) bar recognition of the Swiss Judgment: (1) Etón received insufficient notice to defend in the Swiss proceeding; and (2) the Swiss proceeding was contrary to an agreement between the parties under which disputes were to be determined by a process other than the Swiss court proceedings.  *See* Opp'n at 5; *see also* Cal. Civ. Proc. Code §1716(c)(1)(A), (D).  For

Grundig to prevail on its summary judgment motion, it must show that there are no triable issues on all of Etón's defenses.  The central issues before the court are (1) whether there is a genuine dispute of material fact regarding the sufficiency of Etón's notice in the Swiss proceeding, and (2) whether the parties' agreement required an alternative method of settling disputes outside of the Swiss court.

**B.    Defenses to Bar Recognition of a Foreign Judgment**

**1.    The Defendant in the Foreign Proceeding Received Sufficient Notice (Cal. Civ. Proc. Code § 1716(c)(1)(A))**

Etón argues that there is a genuine dispute of material fact because Etón was not given proper notice in the Swiss proceeding.  *See* Opp'n at 5–7.  "The Recognition Act provides that a court may decline to recognize a foreign money judgment where the defendant in the proceeding in the foreign court did not receive notice of the proceeding in sufficient time to enable the defendant to defend."  *de Fontbrune*, 409 F. Supp. 3d at 837–38; Cal. Civ. Proc. § 1716(c)(1)(A).

Etón cites *de Fontbrune v. Wofsy*, 409 F. Supp. at 838 to argue that its defense on this ground is proper because it "was not served in a manner reasonably calculated to give [it] actual notice of the pendency of the [foreign] proceeding."  Opp'n at 5.  Etón argues that when sufficient notice is at issue, "[d]ue process of law does not require actual notice, but only a method reasonably certain to accomplish that end [and] [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."  *Id.*  Etón maintains that these methods were not employed here.  Although Etón correctly cites the standard for notice, the Court finds that notice here was sufficient.

Here, Grundig completed actual service of the February 4 decree.  The Consulate General of Switzerland in San Francisco hand delivered the February 4 decree via FedEx to an employee at Etón's address in Palo Alto on March 25, 2019.  *See* Reply at 4, Ex. 1.  After Etón received notice on March 25, 2019, and still failed to respond, the Swiss court provided Etón an extension before entering default.  *See* Reply at 4–5.  On June 24, 2019, the Swiss court provided notice of the extension to Etón via publication in the Swiss

United States District Court
Northern District of California

1    Commercial Gazette in hopes that Etón would respond to one of the two methods of

2    service. *See id.* Ex. 3.

3         "Reasonable efforts to provide service can preclude this defense even in the absence

4    of actual notice." *de Fontbrune*, 409 F. Supp. at 838.  Etón does not provide the Court

5    with admissible evidence to adequately refute Grundig's evidence of actual notice.  Etón

6    provided an unverified unsworn declaration from its Chief Operating Officer asserting that

7    Etón was "unaware of the Swiss Proceeding or the Swiss Default Judgment and [had] no

8    record of receiving any notice of [either] prior to the notice provided by the Plaintiff on

9    June 2, 2020." Dkt. No. 30-1 ("Smith Decl.") ¶ 4.[1]  Grundig, however, supplied evidence

10   showing both actual notice, and reasonable efforts to provide such notice. *See* Reply, Exs.

11   1–4.

12        Here, Grundig made reasonable efforts to provide notice as evidenced by the proofs

13   of service, overnight mail to Etón's address in Palo Alto, and publication. *See* Reply, Exs.

14   1–4.  Furthermore, notice by publication in the Swiss Commercial Gazette was sufficient

15   here considering that the parties agreed that any dispute would be governed by Swiss law.

16   *See* Reply at 2–3; *see also* Dkt. No. 27-4 ¶ 8, Ex. A.  In the face of Grundig's evidence

17   provided, it is unclear to the Court why Etón argues that it did not receive notice.

18   Therefore, there is no genuine dispute that Etón received sufficient notice, and its defense

19   on this ground does not support nonrecognition of the Swiss Judgment.

20        **2.    The Proceeding in the Foreign Court Was Not Contrary to an
              Agreement Between the Parties (Cal. Civ. Proc. Code § 1716(c)(1)(D))**

21

22        In addition to its notice defense, Etón vaguely argues that this Court should not

23   recognize the Swiss judgment because it was contrary to an agreement between the parties.

24

25   _____

26   [1] *See e.g.*, *Barroca v. Santa Rita Jail*, No. 04-cv-0482-VRW (PR), 2006 WL 571355, at *4
     (N.D. Cal. Mar. 3, 2006) ("A declaration is not admissible as evidence if not verified as
     true and correct and signed under penalty of perjury."); *Coverdell v. Dept. of Social Health
     Services*, 834 F.2d 758, 762 (9th Cir. 1987) (unsworn assertions "do not constitute
27   evidence"); *Khan v. Bank of America, N.A.*, No. 12-cv-1107-LB, 2015 WL 3919512, at *7
     (N.D. Cal. June 25, 2015) (finding that a declaration not signed under penalty of perjury is
28   not evidence the court can consider when ruling on a motion for summary judgment).

1   *See* Opp'n at 5–6.   Similarly, the Court finds that there is no genuine dispute regarding the

2   terms of the parties' Agreement.   The Recognition Act provides that a Court may refuse to

3   recognize a foreign money judgment if "[t]he proceeding in the foreign court was contrary

4   to an agreement between the parties under which the dispute in question was to be

5   determined otherwise than by proceedings in that foreign court."   Cal. Civ. Proc. Code §

6   1716(c)(1)(D).   Typically, courts find that this defense precludes recognition of a foreign

7   judgment where the parties' original agreement provides valid terms requiring the parties

8   to adjudicate their disputes by means other than foreign court proceedings.   *See*

9   *Montebueno Mktg., Inc. v. Del Monte Foods Corp.-USA*, No. 11-cv-4977-MEJ, 2012 WL

10  986607, at *1 (N.D. Cal. Mar. 22, 2012) (refusing to recognize a foreign judgment after

11  finding that proceedings in the Philippines were contrary to an agreement between the

12  parties requiring them to arbitrate their disputes).

13         Here however, that is not the case.   Etón appears to argue that the proceeding in the

14  Swiss court was contrary to the parties' Agreement because "the Agreement specifically

15  provided that the Plaintiff was to provide any notices to the Defendant at its Palo Alto,

16  California address," yet "the Plaintiff has provided no evidence that the Swiss Proceeding,

17  the February 4 Decree, the June 20 Decree or the Swiss Default Judgment were ever

18  served on the Defendant at the Palo Alto address."   Opp'n at 5–6.   Etón misapplies the

19  standard for this defense.   This defense does not apply broadly to the breach of merely *any*

20  term in an Agreement; rather, it asks specifically whether the parties contractually agreed

21  to resolve disputes in one particular manner, but a foreign court adjudicated the dispute

22  instead.

23         Grundig and Etón entered into an Agreement providing that disputes would be

24  brought in the Swiss court — and that is exactly what Grundig did.   *See* Reply at 6.   The

25  commencement of proceedings in the Swiss court did not violate the parties' agreement.

26  Therefore, Etón's argument under this ground is also insufficient to preclude recognition

27  of the Swiss Judgment.

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### C.    Additional Time for Discovery

Finally, Etón claims that summary judgment is not appropriate at this early stage of litigation because the parties have not had the opportunity to complete discovery.  Opp'n at 7.  This argument is based on Etón's insistence that discovery is "necessary to develop the facts to support its defenses against transfer and recognition of the default judgment taken in Switzerland."  Opp'n at 8.  Rule 56(d) grants district courts discretion to defer considering a summary judgment motion, deny it, or allow additional time for discovery where "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d).  "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on matters stated."  Fed. R. Civ. P. 56(c)(4).

Etón did not cite Rule 56(d) in its request for more time for discovery, nor did it provide the required declaration to request such relief pursuant to the rule.  The only support for this claim comes from Etón's declaration which is inadmissible.  Etón's single unverified declaration does not invoke Rule 56(d) nor explain why Etón needs additional time to present its defenses to Grundig's summary judgment motion.  And even if Etón made the proper request under Rule 56(d), the Court finds that Etón has not met that standard.  Accordingly, this argument fails to create a genuine dispute of material fact and the Court declines to grant Etón relief under Rule 56(d).

Thus, there is no genuine dispute of material fact in this case, and Grundig has met its burden of demonstrating that the Recognition Act applies.  Accordingly, the Court GRANTS Grundig's motion for summary judgment, and recognizes the Swiss default judgment.

## IV. GRUNDIG'S ADMINISTRATIVE MOTION TO SEAL

On a separate motion before the Court is Grundig's administrative motion to seal portions of its motion for summary judgment.  Dkt. No. 27.  There is a "general right to inspect and copy public records and documents, including judicial records."  *Nixon v.*

*Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978).  When a party seeks to seal a judicial record that is more than tangentially related to the underlying cause of action, it must articulate "compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure."  *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (internal citations omitted).  Compelling reasons exist when court records may be used to "gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets."  *Id.* at 1179.  The "compelling reasons" standard is applied to documents attached to a motion for summary judgment because "summary judgment adjudicates substantive rights and serves as a substitute for trial."  *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097–98 (9th Cir. 2016).  Conversely, filings that are only tangentially related to the merits may be sealed upon a lesser showing of "good cause."  *Id.* at 1097.

"The party seeking protection bears the burden of showing specific prejudice or harm will result," *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002), and must make a "particularized showing . . . with respect to any individual document," *San Jose Mercury News, Inc. v. U.S. Dist. Court. N. Dist. (San Jose)*, 187 F.3d 1096, 1103 (9th Cir. 1999).  "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," are insufficient.  *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).  "[S]ources of business information that might harm a litigant's competitive standing" often warrant protection under seal.  *Nixon*, 435 U.S. at 598.

Furthermore, in this district, sealing motions must be "narrowly tailored to seek sealing only of sealable material."  Civil L.R. 79-5(b).  A party moving to seal a document in whole or in part must file a declaration establishing that the identified material is "sealable."  Civil L.R. 79-5(d)(1)(A).  Merely stating that a party designated material as confidential is insufficient by itself to seal a document.  *Id.*

The "compelling reasons" standard applies to this sealing motion because the proposed findings of fact, portions of the brief, and exhibits proposed for sealing are

attached to a summary judgment motion, and are therefore more than tangentially related to the merits of the case. *See Ctr. for Auto Safety*, 809 F.3d at 1097.  As to the highlighted portions of the brief, the proposed findings of fact, Exhibits A–C, and G–N, the Court GRANTS the motion to seal.  The Court DENIES the motion to seal as to Exhibit O.  The Court DENIES the motion to seal Exhibit E WITHOUT PREJUDICE to a renewed motion.

Exhibit A contains the Trademark License and Distribution Agreement between Grundig and Etón.  Dkt. No. 27 at 3.  The exhibit reveals information about Grundig's licensing strategy.  Grundig argues that it would be put at a competitive disadvantage if the exhibit were disclosed because "the Agreement contains sensitive business information of both parties relating to the structure and terms of the [Agreement]," and "if the information were made public, competitors of Grundig would have insight into how Grundig structures its business and intellectual property agreements, giving them an opportunity to modify their own business and intellectual property strategies."  *Id.*  Grundig maintains that this could "significantly harm its competitive standing."  *Id.*  The Court finds appropriate sealing this document.

Exhibits B, and C contain correspondence, and Exhibits G–N are invoices.  The proposed redactions in these exhibits, along with those proposed in the brief and proposed findings of fact, all refer to the commercially sensitive information in Exhibit A.  For those same reasons, the Court finds it appropriate to seal the highlighted portions of these documents.

Exhibit E is the Swiss Judgment from July 10, 2019, and Exhibit O is the Swiss Decree from June 20, 2019.  Grundig seeks to seal both in their entirety because "all identifying information regarding the parties is redacted from the public version of the Judgment, and the June 20, 2019, decree is not publicly available."  Dkt. No. 27 at 3.  The Court does not find sealing appropriate for Exhibit O because there is no sensitive data in that exhibit, and Grundig does not present compelling or narrowly tailored reasons for that document to be sealed from public view.  And although the Court finds that Exhibit E

contains the commercially sensitive information sealed in Exhibit A, the Court does not find that the document should be sealed *in its entirety*. The parties must articulate compelling, narrowly tailored reasons to seal only those commercially sensitive portions of the document.

Accordingly, the Court GRANTS Grundig's motion to seal **the highlighted portions** of the following:

- (1) the brief in support of summary judgment (Dkt. No. 27-1);
- (2) proposed findings of fact (Dkt. No. 27-3);
- (3) Exhibit B (Dkt. No. 27-6);
- (4) Exhibit C (Dkt. No. 27-8); and
- (5) Exhibits G–N (Dkt. Nos. 27-11, 27-13, 27-15, 27-17, 27-19, 27-21, 27-23, 27-25).

The Court further orders the following:

- The Court GRANTS Grundig's motion to seal Exhibit A (Dkt. No. 27-5) in its entirety.
- The Court DENIES Grundig's motion to seal Exhibit O (Dkt. No. 27-27); and
- The Court DENIES Grundig's motion as to Exhibit E (Dkt. No. 27-10) WITHOUT PREJUDICE.

Grundig may refile an administrative motion to seal and supporting declaration for Exhibit E by **February 19, 2021**. Exhibit E will remain temporarily sealed until further court order. The clerk is ordered to unseal Exhibit O (Dkt. No. 27-27).

//

//

//

//

//

//

//

United States District Court
Northern District of California

**V.    CONCLUSION**

For the foregoing reasons, Grundig's motion for summary judgment is GRANTED. The amount owed to Grundig pursuant to the Swiss Judgment is specified under seal at Exhibit E (Dkt. No. 27-10).  The total amount of the judgment in USD, including the court fee and attorneys' fees, is specified under seal at Dkt. No. 27-3 at 13.  The motion to seal is granted in part and denied in part.  A judgment is issued concurrently with this Order.

**IT IS SO ORDERED.**

Dated:  February 5, 2021

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

United States District Court
Northern District of California